UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-61338-CIV-ALTMAN

**PETER ALLAN WIZENBERG**,

    *Appellant*,

v.

**HOWARD WIZENBERG**,

    *Appellee*.

_____

# ORDER

The Appellant[1] appeals the bankruptcy court's order (the "Bankruptcy Order"), which sanctioned him under 28 U.S.C. § 1927 and ordered him to pay $9,850.00 of the Appellee's[2] attorneys' fees. *See* Bankruptcy Record in Case Number 18-01019-JKO ("Record") Part IV [ECF No. 6-5] at 634–99.[3] Having carefully examined the briefs and the record, the Court finds, pursuant to Federal Rule of Bankruptcy Procedure 8019(b)(3), that the parties have adequately presented the facts and legal arguments in their papers—and that, as such, oral argument is unnecessary. This appeal, in short, is ripe for resolution. The Court presumes the parties' familiarity with the facts of this case—which, in any event, are undisputed. For the reasons set out below, the Court hereby construes the Bankruptcy Order as a Report and Recommendation and **ADOPTS** its recommendations in full.

---

[1] The Appellant (Defendant below) is Peter Allan Wizenberg.
[2] The Appellee (Plaintiff below) is Howard Wizenberg.
[3] The Appellant filed his opening brief on July 21, 2019 [ECF No. 8]. The Appellee filed his Response Brief on September 2, 2019 [ECF No. 12]. And the Appellant submitted a Reply Brief on September 15, 2019 [ECF No. 13].

## THE LAW

"In reviewing bankruptcy court judgments, a district court functions as an appellate court. It reviews the bankruptcy court's legal conclusions *de novo*, but must accept the bankruptcy court's factual findings unless they are clearly erroneous." *In re JLJ Inc.*, 988 F.2d 1112, 1116 (11th Cir. 1993) (citation omitted). "A bankruptcy court's imposition of sanctions is reviewed for an abuse of discretion." *In re Hood*, 727 F.3d 1360, 1363 (11th Cir. 2013).

Before a court may award sanctions under 28 U.S.C. § 1927, it must find that "three essential requirements" are present:

> First, the attorney must engage in unreasonable and vexatious conduct. Second, that unreasonable and vexatious conduct must be conduct that multiplies the proceedings. Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings, *i.e.*, the sanction may not exceed the costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

*Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007) (internal quotation marks omitted). An attorney multiplies proceedings unreasonably and vexatiously "only when the attorney's conduct is so egregious that it is tantamount to bad faith." *Id.* (internal quotation marks omitted). And the question of bad faith "turns not on the attorney's subjective intent, but on the attorney's objective conduct." *Id.*

## ANALYSIS

### I. Standard of Review

Relying primarily on *In re Evergreen Sec., Ltd.*, 381 B.R. 407 (Bankr. M.D. Fla. 2007), the Appellant asks this Court to treat the Bankruptcy Order as a Report and Recommendation—containing mere proposed findings of fact and conclusions of law—and to review the entirety of the Bankruptcy Order *de novo*. Appellant's Br. at 6–8, 43–44; *see also* S.D. FLA. L.R. 87.2(c) ("The District Court may treat any order of the Bankruptcy Court as proposed findings of fact and

conclusions of law if the District Court concludes that the Bankruptcy Judge could not have entered a final order or judgment consistent with Article III of the United States Constitution."). The Appellant's argument turns on whether a bankruptcy court is a "court of the United States" within the meaning of 28 U.S.C. § 1927. *See* 28 U.S.C. § 1927 ("Any attorney or other person admitted to conduct cases in any *court of the United States* or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.") (emphasis added). The bankruptcy court here took the view that it is a "court of the United States." Record Part IV at 657. But the Eleventh Circuit has said otherwise.

> For purposes of Title 28:
>
> The term 'court of the United States' includes the Supreme Court of the United States, courts of appeals, district courts constituted by chapter 5 of this title, including the Court of International Trade and any court created by Act of Congress the judges of which are entitled to hold office during good behavior.

28 U.S.C. § 451. The Eleventh Circuit has held that a bankruptcy court lacks jurisdiction—unless the parties consent pursuant to 28 U.S.C. § 157(c)(2)[4]—to award attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, because "Bankruptcy courts are not listed in section 451, and it is indisputable that, as presently constituted, they are not Article III courts." *In re Davis*, 899 F.2d 1136, 1138–42 (11th Cir. 1990); *accord In re Brickell Inv. Corp.*, 922 F.2d 696, 701–02 (11th Cir. 1991) (applying *Davis* to find that bankruptcy court lacked jurisdiction to award attorneys' fees under 26 U.S.C. § 7430).[5]

---

[4] The parties have not consented here, so this caveat is inapposite.
[5] Congress has not amended § 451 since 1982—well before the Eleventh Circuit decided *Davis* and *Brickell*.

3

And this conclusion flows naturally from the text of § 451 itself. *See* Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 69–73 (2012) (discussing the "fundamental" rule that words must be given their plain and ordinary meaning). After all, bankruptcy courts are not "the Supreme Court of the United States, courts of appeals, [or] district courts constituted by chapter 5 of this title." And while the word "including" might suggest that the general phrase "district courts constituted by chapter 5" encompasses more than just the two examples listed in the statute, the set of included courts must "be of the same kind" as the courts described in the rest of the statutory definition. *See id.* at 199 ("Where general words follow an enumeration of two or more things, they apply only to persons or things of the same general kind or class specifically mentioned"); *see also id.* at 195 (describing *noscitur a socii* canon as requiring that words "associated in a context suggesting that [they] have something in common[] . . . should be assigned a permissible meaning that makes them similar"). And what all of the courts enumerated in § 451 have in common—and, indeed, the one thing that distinguishes each of them from, say, bankruptcy or magistrate or immigration courts—is that the judges of these courts "hold," as the statute unambiguously requires, "office during good behavior." A bankruptcy court, in sum, is not a "court of the United States" within the meaning of § 451.

To be sure, some bankruptcy courts within this Circuit have reached the opposite conclusion—at least with respect to sanctions under § 1927.[6] *See In re Ocean 4660 LLC*, 569 B.R.

---

[6] The bankruptcy courts are not alone in their disagreement on this question. In fact, the federal circuit courts of appeals are likewise split on it. *Compare In re Courtesy Inns, Ltd.*, 40 F.3d 1084, 1085–86 (10th Cir. 1994) (bankruptcy court may not impose § 1927 sanctions because it is not a "court of the United States" under § 451); *In re Perroton*, 958 F.2d 889, 893–96 (9th Cir. 1992) (bankruptcy court may not waive fees under 28 U.S.C. § 1915(a) because it is not a "court of the United States" under § 451), *with In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 105 (3d Cir. 2008) (bankruptcy court *may* impose § 1927 sanctions because it is "a unit of the district court, which is a 'court of the United States'" under § 451); *Adair v. Sherman*, 230 F.3d 890, 895 n.8 (7th Cir. 2000) (relying summarily on *In re Volpert*, 110 F.3d 494, 500–01 (7th Cir. 1997), for

4

850, 874–76 (Bankr. S.D. Fla. 2017); *In re Lawrence*, No. 97-14687-BKC-AJC, 2000 WL 33950028, at *2–3 (Bankr. S.D. Fla. June 2, 2000); *In re Brooks*, 175 B.R. 409, 412 (Bankr. S.D. Ala. 1994). In doing so, however, these bankruptcy courts have found certain *non-binding* precedents more persuasive than *Davis* and *Brickell*. But the Eleventh Circuit has never abrogated either *Davis* or *Brickell*—and, as such, this Court is bound to follow them. Moreover, although neither *Davis* nor *Brickell* involved § 1927 specifically, they did answer the critical question of whether a bankruptcy court is a "court of the United States" under § 451. And the Court finds nothing unique about § 1927 that would exclude its provisions from the generally applicable rule those cases pronounced. Put another way, there is nothing in § 1927 to suggest that its use of the phrase "courts of the United States" differs in any salient way from the "courts of the United States" defined in § 451.

To wrap up, then, this Court will apply Local Rule 87.2(c) and treat the Bankruptcy Order as a Report and Recommendation containing proposed findings of fact and conclusions of law. When a bankruptcy court submits proposed findings of fact and conclusions of law to the district court, "any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).[7]

---

proposition that bankruptcy court may impose § 1927 sanctions—though, notably, the *Volpert* panel did not reach that question); *Matter of Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 230 (2d Cir. 1991) (stating, without explanation, that bankruptcy court may impose § 1927 sanctions). Either way, it is sufficient here to note only that the Appellee's view—that bankruptcy courts are "courts of the United States"—is impossible to square with the Eleventh Circuit's pronouncement that "[c]onsideration of [a fee] application by a bankruptcy court under [the report and recommendation] procedure would not raise any problem . . . *because the Article III district court, not the bankruptcy court, would ultimately determine the merits of the application and award the fees*." *Davis*, 899 F.2d at 1141 (emphasis added).

[7] For ease of reference, though, the Court will continue to refer to the parties as "Appellant" and "Appellee."

## II. Waiver

As a preliminary matter, the Appellee contends that many of the Appellant's arguments are raised for the first time in this appeal, *see* Appellee's Br. at 22–24—a contention the record plainly supports.

The Appellee's Sanctions Motion before the bankruptcy court included a set of detailed invoices itemizing the $24,880.00 in attorneys' fees for which the Appellee sought recompense. *See* Record Part IV [ECF No. 6-5] at 268–73, 324–32. After carefully deleting the fees—or *portions* of fees—that the Appellee would have incurred irrespective of the Appellant's behavior, the bankruptcy court awarded the Appellee a sum of $9,850.00. *Id.* at 662–65. The Appellant now seeks to challenge the 22 time-entries upon which the bankruptcy court's award was premised. In support, he proffers a long litany of factual assertions that, in his view, conclusively undermines each of those time entries. *See* Appellant's Br. at 28–44. He also argues that the bankruptcy court could not lawfully impose sanctions without first holding an evidentiary hearing, *Id.* at 18, 22—which, admittedly, the bankruptcy court did not do.

But, with one exception—a challenge to the bankruptcy court's finding that the Appellant had filed a frivolous motion to dismiss for lack of subject matter jurisdiction (the "Motion to Dismiss"), *see* Record Part II [ECF No. 6-3] at 40–49—the Appellant did not present *any* of these arguments to the bankruptcy court in opposition to the Sanctions Motion. Indeed, aside from defending his failed Motion to Dismiss, the Appellant's response to the Sanctions Motion argued only generally that (1) the Appellee had "prosecuted a thoroughly false and malicious, meritless case," and that (2) none of the Appellee's fees were traceable to the Appellant's conduct. Record Part IV at 371–74. The Appellant's response, in short, did not contain any of the individualized attacks he now levies.

What's worse, the Appellant had a second opportunity to raise specific challenges to the Appellee's time-entries at a hearing on the Sanctions Motion. But, at that hearing, he did little more than briefly reiterate the outrageous claims he had made in his response. *See* March 20, 2019 Hr'g Tr. [Bankr. ECF No. 295] at 9–10. In other words, as the Appellee points out, at no time before the bankruptcy court did the Appellant either request an evidentiary hearing or challenge the 22 time-entries with the claims he now makes on appeal.

The Eleventh Circuit has held that district courts do not abuse their discretion by declining to consider arguments that were raised for the first time in a party's objections to a report and recommendation. *See Williams v. McNeil*, 557 F.3d 1287, 1291–92 (11th Cir. 2009). Here, the Bankruptcy Order did not address the Appellant's new factual averments precisely because the bankruptcy court never actually heard them. Accordingly, the Court will exercise its discretion and decline to consider the Appellant's untimely contentions.

But the outcome would have been no different if this case had presented an ordinary 28 U.S.C. § 158(a) bankruptcy appeal instead of a report and recommendation under 28 U.S.C. § 157(c)(1). After all, although reviewing courts should ordinarily refuse to entertain arguments raised for the first time on appeal, the Eleventh Circuit has recognized five circumstances in which it may be appropriate to deviate from this general principle:

> First, an appellate court will consider an issue not raised [below] if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice. Second, the rule may be relaxed where the appellant raises an objection to an order which he had no opportunity to raise at the [lower] court level. Third, the rule does not bar consideration by the appellate court in the first instance where the interest of substantial justice is at stake. Fourth, a[n] appellate court is justified in resolving an issue not passed on below where the proper resolution is beyond any doubt. Finally, it may be appropriate to consider an issue first raised on appeal if that issue presents significant questions of general impact or of great public concern.

*Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1332 (11th Cir. 2004) (alteration and internal quotation marks omitted).

In his Reply Brief, the Appellant asks this Court to consider his new arguments on appeal because, he says, the Bankruptcy Order was supported by "zero" evidence. Reply Br. [ECF No. 13] at 19–21. But, quite to the contrary, as the Court explains more fully below, the record strongly supports the Bankruptcy Order's conclusion that the Appellant's conduct was needlessly vexatious.

In any event, this case presents none of the exceptional circumstances the Eleventh Circuit found apposite in *Access Now*. *First*, the Appellant challenges none of the 22 time-entries on purely legal grounds. *See* Appellant's Br. at 27–43. *Second*, as noted, the Appellant had, not one, but two opportunities to raise these arguments below. *Third*, the requirement that the Appellant should have to compensate the Appellee for the unabashed course of conduct he perpetrated in the bankruptcy proceedings does not implicate any "interest of substantial justice." *Fourth*, the viability of the Appellant's new contentions is most certainly not "beyond any doubt"; indeed, the Appellee vehemently contests them. *Finally*, the Appellant's challenge to a sanctions order in the amount of less than $10,000 presents no "significant questions of general impact or of great public concern."

The Court, in short, will decline to consider any of the new arguments the Appellant raises for the first time in this appeal.

### III. The Merits

#### a. Argument 1: The Sanctions Motion Was Frivolous

The Appellant's remaining contentions merit little attention. First, the Appellant again argues that the Sanctions Motion was frivolous. Appellant's Br. at 19–21. The Court disagrees. As

the bankruptcy court painstakingly detailed in its order granting the Sanctions Motion, the record reveals a pattern of pervasive unprofessional conduct by the Appellant that needlessly lengthened and complicated the proceedings before that court—both before and during trial. *See* Record Part IV at 636–53. To list but a few choice examples, the Appellant: persistently asked the Appellee a litany of double- and triple-negative questions during the latter's deposition and repeatedly told the Appellee's lawyer to "shush" when he tried to object; filed a motion for reconsideration that, among many other irrelevancies, contained bad poetry and propagated immaterial allegations about the Appellee's conduct as a young child; and time and again interrupted opposing counsel's examination of a witness at trial by offering *his own* answers to counsel's questions—drawing, with seeming nonchalance, several angry admonitions from the bankruptcy court. *See* Record Part II at 115–34, 612–28; Record Part IV at 540, 551–52. And, although he has represented himself *pro se* throughout this case, the Appellant is (we should not forget) a member of the Florida Bar with extensive experience in bankruptcy court. *Id.* at 635–36. In these circumstances, the Sanctions Motion was far from frivolous.

There is, however, one aspect of the Appellant's frivolity argument that warrants special mention here. The Appellant falsely claims that the Sanctions Motion sought to "duplicate[] the sanctions" the bankruptcy court had imposed in an earlier order. Appellant's Br. at 21 (emphasis removed). In that earlier order, dated September 24, 2018, the bankruptcy court awarded the Appellee $2,880.00 in attorneys' fees as a result of the Appellant's improper refusal to produce an adequate privilege log. *See* Record Part II at 704–06, 709–10. But, in fact, the Sanctions Motion expressly disclaimed any attempt to recover *any part of* the $2,880.00 in fees that had already been imposed. *See* Record Part IV at 271. And not one of the Appellee's time entries from that initial $2,880.00 award, Record Part II at 697–98, appears anywhere on the list of 22 time-entries the

9

Appellee attached to his Sanctions Motion, *see* Record Part IV at 324–32. Nor did the bankruptcy court include any part of the earlier award in computing the amount of the Bankruptcy Order. In short, the Appellant's argument on this point is entirely belied by the record.

### b. Argument 2: The Sanctions Motion Was Vague

The Appellant next claims that the Sanctions Motion was too vague to warrant relief. *See* Appellant's Br. at 21–23. Specifically, he says that, because the Sanctions Motion sought attorneys' fees "due to Appellant's entire conduct 'throughout this case,'" the Appellant "was not on notice of specific instances of sanctionable behavior, but was 'noticed' on the entirety of all of his behavior!" *Id.* at 22 (emphasis removed). According to the Appellant, this "effectively denied [him] due process under the Fifth Amendment to the Constitution of the United States." *Id.* (emphasis removed).

But, although the Sanctions Motion opened with a reference to the Appellant's "Conduct Throughout this Case," it proceeded to address several specific examples of sanctionable behavior that—with the exception of the privilege log dispute—then formed the basis for the Bankruptcy Order at issue here. *See* Record Part IV at 269–72 (describing the Appellant's failure to turn over discovery materials, his submission of baseless motions, and his repeated attempts to coach a witness during her testimony at trial). The Appellant's notice argument is therefore directly contradicted by the record.

### c. Argument 3: The Motion to Dismiss Was Not Frivolous

Finally, the Appellant repeats his earlier argument that he filed his Motion to Dismiss in the bankruptcy proceedings in good faith. Appellant's Br. at 23–27, 32. This Court has carefully reviewed the Motion to Dismiss and shares the bankruptcy court's view of it. *See* Record Part IV

10

at 637–38, 659–60; *see also* March 20, 2019 Hr'g Tr. ("It was the silliest thing I've ever heard . . . or one of them.").

In the Motion, the Appellant asked the bankruptcy court to dismiss Count II of the Appellee's Amended Complaint for lack of subject matter jurisdiction. Record Part II at 40–49. In Count II, the Appellee sought a judgment that a debt the Appellant owed to the Appellee (and the Appellee's minor children) was non-dischargeable under 11 U.S.C. § 523(a)(4), because that debt had arisen from the Appellant's alleged misappropriation of certain trust assets. *See* Record Part I [ECF No. 6-2] at 19–20, 22–23. The Appellant's Motion to Dismiss alleged that the debt was a "phantom debt" because the trust in question did not exist. Record Part II at 40–41, 43–48. But, even if the Appellant's "phantom debt" claim were true, he had no objectively reasonable basis to challenge the bankruptcy court's jurisdiction to determine, in the first instance, whether the debt was dischargeable. *See id.* at 375–76 (bench ruling denying the Motion to Dismiss).

Considering the Appellant's objective conduct—and not his subjective intent, *see Amlong*, 500 F.3d at 1239—the Court agrees with the bankruptcy court's conclusion that the Motion to Dismiss was frivolous.

******

Having rejected each of the Appellant's objections to the Bankruptcy Order, the Court hereby **ORDERS AND ADJUDGES** as follows:

1. The May 15, 2019 Order of the Bankruptcy Court [ECF No. 6-5]—including its fee award of $9,850.00 under 28 U.S.C. § 1927—will be treated as a Report and Recommendation, which this Court has **ADOPTED in full**.

2. The Clerk is directed to **CLOSE** this case. All pending deadlines and hearings are **TERMINATED**, and any pending motions are **DENIED AS MOOT**.

11

**DONE AND ORDERED** in Fort Lauderdale, Florida this 31st day of January 2020.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record